UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v. Case No: 6:26-cr-23-JSS-CAB-1

RENWICK LEVAR TUCKER,

Defendant.
___________________________________/

**ORDER**

Defendant, Renwick Levar Tucker, moves to suppress the admission of evidence obtained by law enforcement officers after his arrest on December 5, 2025, and allegedly inculpatory statements that he made on July 15, 2026, during his transport from the Brevard County jail to the United States Marshals' custody. (Dkt. 28.) The Government opposes the motion. (Dkt. 31.) For the reasons outlined below, the court denies the motion.

**BACKGROUND**

Melbourne Police Department Officer Kevin Murphy states in his affidavit that on December 5, 2025, he was on routine uniformed patrol in a marked police vehicle. (Dkt. 28-1 at 3.) During his patrol, Officer Murphy reportedly observed Defendant sitting on the staircase of an apartment building. (*Id.*) Officer Murphy states that he had contact with Defendant prior to December 5, 2025, so Officer Murphy was familiar with Defendant's appearance, and Officer Murphy also knew that Defendant

had an active felony warrant from Brevard County for possession of cocaine and possession of cocaine with intent to sell. (*Id.*) Allegedly, after spotting Defendant, Officer Murphy pulled his vehicle into the apartment complex, approached Defendant on foot, and arrested Defendant. (*Id.*) According to Officer Murphy, when he arrested Defendant, he noticed that Defendant had a black zippered bag on his person. (*Id.*) Body-worn camera footage from Officer Murphy and a second officer depicts what happened next.[1]

At the front of a police vehicle, Defendant stood with his hands restrained behind his back in handcuffs, and Officer Murphy stood behind Defendant. (Dkt. 28-2b at 00:02). A bystander was located to the side of Officer Murphy and Defendant, and Defendant still had the black zippered bag on his person. (*Id.*) Officer Murphy removed the black zippered bag from Defendant and placed it on the hood of the police vehicle. (*Id.* at 00:05 to 00:20.) Officer Murphy then adjusted Defendant's handcuffs. (*Id.* at 00:20 to 00:46.) After adjusting Defendant's handcuffs, Officer Murphy grabbed the black zippered bag from the hood of the police vehicle and took the bag to the back of the police vehicle while a second officer remained at the front of the police vehicle with Defendant. (*Id.* at 00:47 to 00:59.) Once at the back of the police vehicle, Officer Murphy prepared to search the black zippered bag. (Dkt. 28-2a at 00:00 to 1:02.) Inside the black zippered bag, Officer Murphy uncovered a loaded firearm, a cell

[1] As part of his motion to suppress, Defendant submitted a flash drive containing footage from Officer Murphy's body camera and the body camera of a second officer. (Dkt. 28-2.) On that flash drive, Officer Murphy's footage is labeled "29F_-_Warrant-_Felony-4," and the footage from the second officer is labeled "29F_-_Warrant-_Felony-6." For ease of reference, the court will refer to Officer Murphy's footage as (Dkt. 28-2a) and the second officer's footage as (Dkt. 28-2b).

phone, a plastic bag containing a leafy green substance, and a wallet. (*Id.* at 1:02 to 1:27.)

While Officer Murphy searched the black zippered bag at the back of the police vehicle, the second officer holding Defendant at the front of the police vehicle patted Defendant down. (Dkt. 28-2b at 1:08 to 1:30.) Once the second officer finished patting Defendant down, the bystander located near the front of the police vehicle held a cell phone near Defendant to facilitate a phone call, and Defendant told an individual on the phone call to come quickly because the police had him. (*Id.* at 01:31 to 01:53.) Upon completion of the phone call, Defendant began to feel ill and proceeded to vomit at the front of the police vehicle. (*Id.* at 1:54 to 2:30.) Afterwards, the second officer moved Defendant to the side of the police vehicle, and the bystander walked away. (*Id.* at 2:30 to 2:41.) Defendant then became ill again and vomited. (*Id.* at 2:41 to 3:00.) As Defendant was vomiting, Officer Murphy returned from the back of the police vehicle and patted Defendant on the back while Defendant continued to vomit. (*Id.* at 3:01 to 3:09.) After Defendant finished, Defendant sat down on a curb briefly before Officer Murphy instructed Defendant to stand up so Officer Murphy could pat Defendant down. (*Id.* at 3:10 to 3:20.) While Officer Murphy patted Defendant down, a third officer arrived on the scene. (*Id.* at 3:16.) After Officer Murphy finished patting Defendant down, Officer Murphy allowed Defendant to sit inside the police vehicle. (*Id.* at 3:20 to 4:20.)

According to Officer Murphy, the leafy green substance that he found in the black zippered bag later tested positive for marijuana during a field test, and Officer

Murphy verified that Defendant was a convicted felon. (Dkt. 28-1 at 3–4.) On January 28, 2026, a grand jury returned a one-count indictment charging Defendant with unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). (Dkt. 1.) Defendant represents that on July 15, 2026, agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) transported him from the Brevard County jail to the United States Marshals. (Dkt. 28 at 7.) Purportedly, one of the ATF agents interviewed Defendant for over an hour during the transport after reading Defendant his *Miranda* rights,[2] and Defendant claims to have made inculpatory statements during that interview. (*Id.*)

## APPLICABLE STANDARDS

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quotation omitted); *see also United States v. Watkins*, 13 F.4th 1202, 1210 (11th Cir. 2021) ("A Fourth Amendment violation can trigger the exclusionary rule, which requires courts to suppress illegally obtained evidence, but that rule has several exceptions."). "Exceptions exist because

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

the [exclusion of evidence] 'has always been [a court's] last resort, not [a court's] first impulse.'" *Watkins*, 13 F.4th at 1210 (quoting *Utah v. Strieff*, 579 U.S. 232, 238 (2016)).

Among the various exceptions to the warrant requirement and exclusionary rule are searches incident to arrest and the inevitable discovery doctrine. *Gant*, 556 U.S. at 338 ("Among the exceptions to the warrant requirement is a search incident to a lawful arrest."); *Watkins*, 13 F.4th at 1210 (explaining that the "inevitable or ultimate discovery" doctrine is one "of the exceptions to the exclusionary rule"). The search-incident-to-arrest exception permits a search of "the arrestee's person and the area within his immediate control." *Gant*, 556 U.S. at 339 (quotation omitted). This exception "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Id.* at 338. The inevitable discovery doctrine "allows for the admission of evidence that would have been discovered even without the unconstitutional source." *Watkins*, 13 F.4th at 1210 (quoting *Strieff*, 579 U.S. at 238). "The purpose of the [inevitable] discovery exception is to put the police in the same, not a worse, position than they would have been in if no police error or misconduct had occurred." *Id.* (alterations adopted and quotation omitted).

**ANALYSIS**

Defendant moves to suppress the evidence found inside the black zippered bag after his arrest on December 5, 2025. (Dkt. 28 at 7.) Additionally, Defendant moves to suppress the purportedly inculpatory statements he made on July 15, 2026, based on his contention that those statements are tainted by Officer Murphy's unlawful

search of his black zippered bag. (*Id.*) The parties do not dispute that Officer Murphy did not have a warrant to search Defendant's black zippered bag. (*See* Dkts. 28, 31.) What the parties dispute, however, is whether the search-incident-to-arrest exception or the inevitable discovery doctrine applies to Officer Murphy's search of Defendant's black zippered bag. (*See* Dkts. 28, 31.) Because both exceptions are applicable here, Defendant's motion to suppress is due to be denied.

As to the search-incident-to-arrest exception, Defendant relies on *United States v. Davis*, 997 F.3d 191 (4th Cir. 2021), to argue that the search-incident-to-arrest exception does not apply because Officer Murphy searched the black zippered bag after it was out of Defendant's reach and secured by officers on the scene. (Dkt. 28 at 10.) *See Davis*, 997 F.3d at 198 (concluding that the search of a backpack after the arrest of the defendant was not a valid search incident to arrest because the defendant was handcuffed, face down on the ground, and was not within reaching distance of the backpack). The Fourth Circuit reached its conclusion in *Davis* after determining that the Supreme Court's holding in *Gant*, 556 at 351 (permitting police to "search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or if it is reasonable to believe the vehicle contains evidence of the offense of arrest"), applied to non-vehicular searches incident to arrest. *Davis*, 997 F.3d at 197 (holding that *Gant* applies to the search of non-vehicular containers).

The circuits are split concerning whether *Gant* applies to non-vehicular searches incident to arrest. *See United States v. Curtis*, 635 F.3d 704, 713 (5th Cir. 2011) ("Our sister circuits have divided over whether *Gant* applies solely in the vehicular-search context or whether it generally limits the scope of the search-incident-to-arrest exception."). Some circuits, like the Fourth Circuit, have held that *Gant* limits the scope of all searches incident to arrest. *See United States v. Knapp*, 917 F.3d 1161, 1168 (10th Cir. 2019) (interpreting *Gant* "as focusing attention on the arrestee's ability to access weapons or destroy evidence at the time of the search, rather than at the time of the arrest, regardless of whether the search involved a vehicle"); *United States v. Cook*, 808 F.3d 1195, 1199 n.1 (9th Cir. 2015) (concluding that *Gant*'s holding is not "limited only to automobile searches"); *United States v. Shakir*, 616 F.3d 315, 318 (3d Cir. 2010) (reading *Gant* as "refocusing [courts'] attention on a suspect's ability (or inability) to access weapons or destroy evidence at the time a search incident to arrest is conducted"). Other circuits have limited *Gant*'s holding to vehicular searches. *See United States v. Perez*, 89 F.4th 247, 256 (1st Cir. 2023) (explaining that *Gant* "did not address carried personal property at all" because *Gant* "concerned only whether a car may be searched incident to a lawful arrest of an occupant of the car"); *United States v. Brewer*, 624 F.3d 900, 906 (8th Cir. 2010) (holding that searches incident to arrest outside of a vehicle do not implicate *Gant*).

The Eleventh Circuit has not weighed in on this circuit split. *See United States v. Williams*, No. 2:19-CR-401-LCB-GMB, 2020 WL 4341722, at *10 (N.D. Ala. June 10,

2020) ("The Eleventh Circuit has remained silent on the applicability of *Gant* to situations outside the vehicular search context."), *report and recommendation adopted*, No. 219CR401LCBGMB1, 2020 WL 4336061 (N.D. Ala. July 28, 2020). Nonetheless, the Eleventh Circuit has routinely held that "[e]ven after police have gained control over an item belonging to a suspect, officers may search that item incident to an arrest." *United States v. Cobb*, No. 23-11876, 2024 WL 3874204, at *1 (11th Cir. Aug. 20, 2024); *see, e.g.*, *United States v. Rosenthal*, 793 F.2d 1214, 1232 (11th Cir. 1986) (upholding search of a bag outside of the defendant's reach as "incident to a lawful arrest"); *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985) (explaining that officers may search incident to arrest "personal property such as a wallet found on the person of the arrestee"); *United States v. Jean*, 636 F. App'x 767, 769 (11th Cir. 2016) ("[S]earches of wallets or bags on or near the arrestee are valid searches incident to arrest under a variety of factual circumstances."); *United States v. Jones*, 218 F. App'x 916, 918 (11th Cir. 2007) (finding the warrantless search of a bag permissible under the search-incident-to-arrest exception even though the defendant was handcuffed and surrounded by officers at the time of the search).

Here, video footage indicates that Defendant was wearing the black zippered bag when Officer Murphy arrested him, (Dkt. 28-2b at 00:02), and Defendant does not argue that his arrest was unlawful, (*see* Dkt. 28). In light of the applicable Eleventh Circuit precedent, Officer Murphy's search of the black zippered bag was a valid search incident to arrest.

Further, even if Officer Murphy's search of the black zippered bag was not a permissible search incident to arrest, the inevitable discovery doctrine would nevertheless apply. "When police take custody of a bag, suitcase, box, or any similar container, they may open it in order to itemize its contents pursuant to standard inventory procedures." *United States v. Farley*, 607 F.3d 1294, 1333 (11th Cir. 2010). Courts refer to such searches as inventory searches, *see id.*, and the Eleventh Circuit has consistently upheld the search of bags during an arrest under the inevitable discovery doctrine because "officers would have inevitably searched the bag during an inventory" search. *United States v. Dixon*, 491 F. App'x 120, 122 (11th Cir. 2012); *see Jean*, 636 F. App'x at 769 ("Even if the search was not valid under [Eleventh Circuit] precedent, the contents of the bag would nevertheless have been admissible because the officers inevitably would have discovered the evidence in a routine inventory search following [the defendant's] arrest." (quotation omitted)).

For example, in *United States v. Rhind*, police officers detained and handcuffed several defendants as they left a hotel room. 289 F.3d 690, 692 (11th Cir. 2002). One of the defendants carried a black bag, and an officer searched the bag and found money and syringes. *Id.* The Secret Service also searched the bag later, and a Secret Service agent found counterfeit money in the bag. *Id.* The defendants subsequently moved to suppress the evidence found in the bag, and the district court denied the motions to suppress based on *Terry v. Ohio*, 392 U.S. 1 (1968). On appeal, the Eleventh Circuit affirmed the district court's denial and noted that the inevitable discovery doctrine applied to the search of the bag, as well. *See Rhind*, 289 F.3d at 694 ("Assuming . . .

that the district court erred by denying the motions to suppress based upon *Terry*, the contents of the bag would nevertheless have been admissible because the officers inevitably would have discovered the evidence in a routine inventory search following [the defendants'] arrest for counterfeiting.").

For the foregoing reasons, Defendant's request to suppress the evidence from the search of his black zippered bag is denied. Likewise, Defendant's request to suppress his July 15, 2026 statements is denied. Defendant contends that his inculpatory statements should be suppressed as "fruit of the poisonous tree" because Officer Murphy unlawfully searched the black zippered bag. (Dkt. 28 at 7, 12.) "Under the so-called 'fruit of the poisonous tree' doctrine, admissions or confessions that the police induce by confronting a suspect with evidence obtained through an illegal search or seizure must be suppressed." *United States v. Timmann*, 741 F. 3d 1170, 1182 (11th Cir. 2013). "The [G]overnment bears the burden of demonstrating that evidence was not obtained as a direct result of the illegal search." *Id.* (quotation omitted). As explained herein and in the Government's response, (Dkt. 31), Officer Murphy's search of the black zippered bag was not illegal and thus did not taint Defendant's allegedly inculpatory statements made after his arrest. *See United States v. Smith*, 353 F. App'x 229, 231 (11th Cir. 2009) ("Because [the defendant's] search was not in violation of the Fourth Amendment . . . his statements to police were not tainted by an illegal search."); *cf. United States v. Lopez-Garcia*, 565 F.3d 1306, 1315 (11th Cir. 2009) (rejecting "fruit of the poisonous tree argument" regarding inculpatory statements made after an arrest because the defendant's seizure and arrest were

constitutional and thus "neither of [the defendant's] subsequent statements was tainted by those events").

As a final matter, although Defendant requests an evidentiary hearing regarding his motion to suppress, (Dkt. 28 at 12), an evidentiary hearing is not necessary for the court to decide Defendant's motion to suppress. (*See* Dkt. 31 at 10.) Evidentiary hearings are not required for all motions to suppress. *See United States v. Spearman*, 178 F.4th 1295, 1307 (11th Cir. 2026) (explaining that a "district court may elect to hold a hearing" on a motion to suppress but "need not do so in all circumstances"). "[F]or a hearing to be required, the motion must allege facts which, if proven, would provide a basis for relief." *Id.* (quotation omitted). In his motion, Defendant does not allege any facts that, if proven, would provide a basis for relief. (*See* Dkt. 28.) Further, Defendant's motion presents issues of law rather than disputed facts, (*see id.*), and courts need not hold an evidentiary hearing to resolve issues of law raised in a motion to suppress. *See United States v. Horne*, 198 F. App'x 865, 870 (11th Cir. 2006) (discerning no abuse of discretion when the district court did not hold an evidentiary hearing on motions to suppress because the motions did not raise "a disputed issue of fact that required resolution in an evidentiary hearing").

## CONCLUSION

Accordingly, Defendant's motion to suppress (Dkt. 28) is **DENIED**.

**ORDERED** in Orlando, Florida, on October 9, 2026.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record